# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MICHAEL T. CHICHERCHIA,

         Petitioner,

  v.            9:16-CV-1027
                (NAM/ATB)

THOMAS GRIFFIN, Superintendent

         Respondent.

MICHAEL T. CHICHERCHIA, Petitioner, pro se
ALYSON J. GILL, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the
Honorable Norman A. Mordue, Senior United States District Judge, pursuant to 28
U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, incarcerated at Green Haven Correctional Facility, filed this petition,
pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction, dated August 8,
2008, after an Oneida County Court jury found petitioner guilty of a one count of
predatory sexual assault against a child (New York Penal Law ("Penal Law") §
130.96); one count of first degree criminal sexual act (Penal Law § 130.50 (3)); and
three counts of first degree sexual abuse (Penal Law § 130.65 (1), (3)).  Petitioner was
sentenced to twenty-three years to life imprisonment on the predatory sexual assault
charge; a concurrent prison term of twenty-three years, followed by twenty years of
post-release supervision on the first degree sexual assault charge; and concurrent seven
year prison terms for each of the remaining three charges of sexual abuse in the first

degree, followed by ten years post-release supervision.

Prior to the perfection of his direct appeal, petitioner filed a pro se motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 dated May 17, 2010, which was denied by the trial court on June 23, 2010. (Dkt. No. 27, State Court Record ("SR") 1-39). The Appellate Division, Fourth Department ("Appellate Division") denied petitioner leave to appeal the denial of his section 440.10 motion on April 13, 2011. (SR 102).

The Appellate Division considered plaintiff's direct appeal, and affirmed petitioner's convictions on July 8, 2011. *People v. Chicherchia*, 86 A.D.3d 953 (4th Dep't 2011). The New York Court of Appeals denied leave to appeal on November 22, 2011. *People v. Chicherchia*, 17 N.Y.3d 952 (2011).

Petitioner filed a pro se motion for a writ of error coram nobis in the Appellate Division on or about April 30, 2012. (SR 209-28). The Appellate Division summarily denied his application on June 8, 2012. *People v. Chicherchia*, 96 A.D.3d 1512 (4th Dep't 2012). The New York Court of Appeals denied petitioner's application for leave to appeal on April 12, 2016. (SR 232).

Petitioner filed a second pro se motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10, dated January 18, 2013, which was denied by the trial court on March 7, 2013. (SR 282-85). There is no record that plaintiff sought leave to appeal this decision.

Petitioner filed a second pro se motion for a writ of error coram nobis in the Appellate Division, dated September 13, 2014, claiming ineffective assistance of

appellate counsel. (SR 286-95). The Appellate Division summarily denied his application on November 14, 2014. *People v. Chicherchia*, 122 A.D.3d 1346 (4th Dep't 2014). The New York Court of Appeals denied petitioner's application for leave to appeal on July 2, 2015. *People v. Chicherchia*, 25 N.Y.3d 1199 (2015).

In his federal habeas corpus application filed on August 22, 2016, petitioner raises the following grounds for relief:

    (1)    Petitioner's appellate counsel was ineffective.

    (2)    At trial, the prosecution relied upon an illegally obtained audio recording of a telephone conversation between petitioner and the victim's mother.

    (3)    The trial court failed to *sua sponte* order a competency hearing.

    (4)    The trial court violated his Sixth Amendment right to self-representation.

(Petition ("Pet.") ¶ 13) (Dkt. No. 1). Petitioner also filed several exhibits[1] and a memorandum of law with his petition.

Respondent filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. No. 24). Petitioner submitted a reply. (Dkt. No. 38). For the following reasons, this court agrees with respondent and will recommend denial of the petition.

---

[1] These documents and most of the state court records accompanying respondent's papers, including the trial transcript, have been sealed to protect the identity of a victim of sexual abuse, in accordance with L.R. 8.1. (Dkt. No. 3, 23).

# DISCUSSION

## I.   <u>Relevant Facts</u>

Both parties have set forth the relevant facts in their pleadings. The court will only summarize and supplement the facts as necessary for clarity and to discuss the grounds raised by the petitioner. Because this case involves sex-related crimes with an under-aged victim, the court will refer to the child and her mother by their initials, or will refer to child as the "victim."

### A.   **Investigation and Arrest**

On December 29, 2007, V.M. made plans to visit a local nightclub to celebrate her birthday, and scheduled a babysitter to stay with her six-year-old daughter, C.M. (Trial Transcript[2] ("TT.") 193-95). V.M. did not own a car, but arranged for a friend, petitioner Michael T. Chicherchia, to drive her to the nightclub. (TT. 195). Petitioner and V.M. were at the nightclub for approximately forty-five minutes when they learned that C.M.'s babysitter had to leave. (TT. 195-96). Soon after, petitioner and V.M. left the nightclub together. (TT. 196).

Upon returning to V.M.'s apartment, petitioner offered to take over as C.M.'s babysitter if V.M. wanted to drive petitioner's car back to the nightclub. (TT. 197-98). Petitioner had never babysat for C.M. before, but had spent time with her. (TT. 212, 214). V.M. accepted petitioner's offer, and was away from the apartment for most of the night and early morning. (TT. 199-200). Petitioner was alone in the apartment with C.M. from approximately 11 p.m. on December 29, 2007 until approximately 10:30

---

[2] The transcript of the June 2008 trial of petitioner is part of the sealed record at Dkt. Nos. 27-3 to 27-7.

a.m. on December 30, 2007. (TT. 318). V.M. returned briefly during that period to check on her daughter and deliver petitioner a pack of cigarettes that he had requested. (TT. 199).

On December 30, 2007, V.M. took her daughter to the movies. (TT. 201). On their walk home, C.M. told her that petitioner had sexually abused her while babysitting the night before. (*Id*.) C.M. said that petitioner had touched her "tu-tu" with his hands, mouth, and tongue.[3] (TT. 284-85). C.M. also told her mother that petitioner had undressed, grabbed her wrist, and put her hand on petitioner's "tu-tu." (TT. 285-86).

That day, V.M. took her daughter for a medical examination. (TT. 202). She then contacted the Utica Police Department. (TT. 203). The case was referred to Investigator Rick Salamone, a member of the Town of New Hartford Police Department who worked at the Child Advocacy Center in the City of Utica, and specialized in sexual abuse cases. (TT. 226-27). On January 2, 2008, Investigator Salamone interviewed C.M. at school, with a representative from Child Protective Services, a victim advocate, and the school guidance counselor present. (TT. 231-33). He then arranged for V.M. to make a "controlled" telephone call to petitioner in an attempt to corroborate the allegations. (TT. 235-39). V.M. agreed to allow Salamone to listen in and record the telephone call, and signed a consent form to that effect. (TT. 205-207, 240-42).

During the course of an approximately sixteen minute telephone call between

---

[3] At trial, C.M. identified the location of body parts on a gingerbread man, and testified that the "tu-tu" was the "spot where little girls go pee pee." (TT. 283-85). C.M. testified that she knew that little boys had tu-tus as well. (T.T. 283).

petitioner and V.M. on January 3, 2008, petitioner admitted to touching and licking C.M.'s vagina.[4] (TT. 209-11; Dkt. No. 30). He also admitted that he made C.M. touch his penis. (Dkt. No. 30). Later that day, petitioner was arrested. (TT. 249). During an interview with Inspector Salamone following his arrest, petitioner told him that "I touched and licked [C.M's] vagina because the opportunity was there." (TT. 263).

## B.     Pre-Trial

Petitioner was indicated on five charges on February 13, 2008: predatory sexual assault against a child; criminal sexual act in the first degree; and three counts of sexual abuse in the first degree. (SR 126-27). On March 26, 2008, petitioner appeared before Judge Michael L. Dwyer for a pre-trial hearing with his appointed legal counsel, Leland McCormac of the Oneida County Public Defenders Office. (SR 135-140). Immediately after Mr. McCormac declined oral argument on petitioner's discovery motions, petitioner addressed the court:

> Petitioner:     Your Honor, then I would like a new attorney, because Leland McCormac has not been on the same ball piece [sic] since the beginning of this. I have repeatedly told him that I have been set up. It's not me on the tape . . . . The audiotape is a fraud. They have no evidence that I sexually assaulted anyone. The D felony is a fraud. They have no evidence, no saliva proving - -

> The Court:     Mr. Chicherchia, I suggest you keep your mouth closed about the facts of the case. You have been assigned a public defender. If at any time you want to go out and hire your own attorney - - that means pay for your own attorney - - you are free to do so, but if you cannot afford to hire your own attorney - -

---

[4] A copy of this recording was filed with respondent's answer. (Dkt. No. 30).

Petitioner:    Then I choose to represent myself.

The Court:    Do not interrupt me, Mr. Chicherchia.  If you cannot
              afford to hire your own attorney, then Mr. McCormac will be your
              counsel.  So those are the only two options you have; pay for your
              own attorney - -

Petitioner:    I have the option of representing myself.

The Court:    Do not interrupt.  Those are the only two options you have;
              pay for your own attorney or you will have Mr. McCormac
              represent you.

(SR 136-40).

    After this discussion, Judge Dwyer decided several of the discovery motions in

petitioner's favor. (SR 138-39).  At the close of the hearing, petitioner again addressed

the court:

Petitioner:    I'd like to apologize for my actions, your Honor.  I'm very
              upset right now.

The Court:    You don't need to apologize.  You need to think seriously
              about your case, work with Mr. McCormac on trying to build
              whatever defense you can raise at the time of trial, and we'll
              have a trial.  Twelve people that don't know you or anything
              about this case will come in here, listen to the evidence and
              they will make their decision.

Petitioner:    I really need to have him come by the witness, your Honor,
              because he could save - - his testimony could save my life, if
              you please grant the request to have this person come in as a
              witness for me.

The Court:    You talk to Mr. McCormac about any witnesses you have.  He
              will do an investigation, and if he feels they are legitimate
              witnesses that could add valuable information about these
              charges, I'm sure that they will be here at the time of trial.  All
              right?

McCormac: Thank you, your Honor.

(SR 139-40).

## C.    Trial and Sentencing

Judge Dwyer presided over a three day jury trial that took place between June 23 and June 25, 2008.  The prosecution offered the sworn testimony of four witnesses: Sergeant Edward Noonan of the Utica Police Department, who responded to the initial complaint (TT. 163-68); Dr. Jawad Shaikh, who performed a general medical examination of C.M. on December 30, 2007 (TT. 168-75); Inspector Salamone (TT. 226-75); and V.M (TT. 192-226).  Due to C.M.'s young age, the victim offered unsworn testimony regarding the assault. (TT. 275-91).  The prosecution also played the audio recording of the January 3, 2008 telephone conversation between petitioner and V.M. (TT. 274-75).

Petitioner testified on his own behalf, and denied the charges against him. (TT. 293-373).  He also challenged the legitimacy of the audio recording, and testified that he had felt pressured by Inspector Salamone to confess to the abuse of C.M. (TT. 325-35).

The twelve person jury found petitioner guilty of all charges on June 25, 2008. (TT. 464-67).  On August 8, 2008, Judge Dwyer sentenced petitioner to concurrent sentences of twenty-three years to life imprisonment on the charge of predatory sexual assault against a child; twenty-three years imprisonment and twenty years post-release supervision on the charge of criminal sexual act in the first degree; and seven years in state prison and ten years of post-release supervision on the three counts of sexual

abuse in the first degree. (SR 188-89). Prior to issuing his sentence, Judge Dwyer stated that "It is obvious to the Court that the defendant has a number of mental health problems, and that has clouded his judgment from the start of this trial. Despite that, the fact that you do suffer from mental health issues, it does not excuse what went on." (SR 187).

## II.     Generally Applicable Law

### A.     Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182  (quoting *Williams v.*

*Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U,S 37, 132 S. Ct. 2148, 2155 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1703 n.3 (2014).

**B.    Exhaustion**

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with

powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)). Petitioner has exhausted all but one claim in this proceeding.

## III.  Ineffective Assistance of Appellate Counsel

### A.  Legal Standards

The general standard for ineffective assistance of counsel, articulated by the Supreme Court in *Strickland v. Washington*, applies to both trial and appellate counsel. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999) (*Strickland* standard also applies to effectiveness of appellate counsel). While a defendant has the right to effective counsel on appeal, *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), in the appellate context, counsel is not required to advance every non-frivolous argument that could be made. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts*, 469 U.S. at 394; *see also Jones v. Barnes*, 463 U.S. 745, 75 (1983)). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted

significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

## B. Application

### 1. Exhausted Claim - Jury Bias

During jury selection at petitioner's trial, the trial judge recognized one of the prospective jurors as "good friends of my brother," and told him that "I didn't know you were still around." (TT. 34). The individual had been out of state for twenty-five years, and had recently returned to the area. (*Id.*) The judge told the prospective juror that it was "[g]reat to see you. I'll tell my brother." (*Id.*). Neither party raised any challenge to this individual, and he ultimately served as one of the twelve jurors who found petitioner guilty. (TT. 94).

Petitioner argues that his appellate counsel was ineffective, because he did not argue that petitioner's right to a fair trial had been violated by the juror's relationship to the trial judge. (Pet. at 3). Petitioner had previously raised this argument in his application to the Appellate Division for coram nobis relief, which is the proper way to exhaust a claim of ineffective assistance of appellate counsel. *See People v. Bachert*, 69 N.Y.2d 593, 598, 516 N.Y.S.2d 623, 626 (N.Y. 1987) (In New York, a common law writ of error coram nobis, filed in the appellate court, is the proper vehicle for bringing a claim of ineffective assistance of appellate counsel); *Turner v. Miller*, 124 F. App'x 682, 683-84 (2d Cir. 2005) (same). Because the Appellate Division denied petitioner's claim on the merits in a summary order, *see People v. Chicherchia*, 122 A.D.3d 1346

(4th Dep't 2014), the deferential AEDPA standard applies.

Petitioner's appellate counsel filed a fifteen page brief which provided ample and appropriate citations to the trial record and to relevant legal authority in support of three colorable claims: (1) the trial court violated petitioner's right to self-representation; (2) the trial court failed to order a competency examination in accordance with state law; and (3) the lack of a competency examination violated petitioner's federal constitutional rights. (SR 103-118).

Petitioner is correct that the Sixth and Fourteenth Amendments guarantee a criminal defendant the right to an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) (citing *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). However, in order to present a colorable jury bias claim, petitioner's appellate counsel would have had to show actual bias, not the mere presence of a potential conflict for a juror. *Smith v. Phillips*, 455 U.S. 209, 216–17 (1982) ("[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.").

The sole basis for petitioner's bias claim is that a juror had been friends with Judge Dwyer's brother before moving out of state, and was therefore acquainted with the judge. (Pet. at 3). During jury selection, this juror stated that he knew of no reason why he could not be fair to both sides. (TT. 34). When questioned by petitioner's trial

counsel, the juror confirmed that he could keep an open mind in order to evaluate all the evidence. (TT. 84). The juror also agreed with petitioner's trial counsel that he would return a not guilty verdict if the prosecution did not prove every element of the charge beyond a reasonable doubt. (TT. 91). There is nothing in the record to suggest that this juror's friendship with the judge's brother gave rise to any actual bias. Accordingly, there is nothing to suggest that petitioner's jury bias argument was a "significant and obvious" issue omitted by appellate counsel in favor of "clearly and significantly weaker" claims.

The failure to make an argument that has little chance of success does not constitute ineffective assistance of counsel. *Baptiste v. Ercole*, 766 F. Supp. 2d 339, 367 (N.D.N.Y. 2011) (citations omitted). Thus, the Appellate Division's rejection of petitioner's application for coram nobis relief cannot be considered an unreasonable application of *Strickland*. Therefore, this court recommends dismissal of this ineffective assistance of appellate counsel claim.

## 2.    Unexhausted Claim - Failure to Challenge Juror

Petitioner further claims, for the first time in his habeas petition, that his appellate counsel was ineffective for failing to argue that trial counsel was ineffective because he failed to challenge this same juror for his acquaintance with the judge. (Pet., Dkt. No. 1 at 5, 9). Petitioner argues that the juror could have been removed for cause. Because this claim is unexhausted, and the state court did not consider the merits, the AEDPA standard does not apply. Rather, as stated above, the standard for considering an unexhausted claim under section 2254(b)(2) is whether it is "plainly meritless."

14

*Rhines v. Weber*, 544 U.S. 269, 277 (2005).

This claim relies upon the same unsupported allegations of juror bias, discussed above. Moreover, the record shows that petitioner's trial counsel questioned this juror about his ability to fairly consider all the evidence in reaching a verdict, and the juror confirmed that he could fairly and impartially weigh the evidence. Therefore, this court recommends dismissal on the grounds that this unexhausted claim is plainly meritless.

## IV. <u>Unauthorized Recording Claim</u>

### A. **Legal Standards**

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a petitioner may not challenge an allegedly unconstitutional search and seizure in an application for federal habeas relief. *Id.* at 481-82; *see also Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue.").

The Second Circuit has determined that review of a Fourth Amendment claim in a habeas corpus application is proper only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in that process. *See Capellan*, 975 F.2d at 70; *Gates v. Henderson*, 568 F.2d 830, 839-40 (2d Cir. 1977). New York

provides an approved mechanism for litigating Fourth Amendment claims. *See Capellan*, 975 F.2d at 70 (citing N.Y. Crim. Proc. § 710.10 et seq.); *Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing N.Y. Crim. Proc. Law § 710.10 and finding that the Second Circuit has explicitly approved New York's procedure for litigating Fourth Amendment claims) (citing *inter alia Capellan*, 975 F.2d at 70 n.1) (other citations omitted)).

## B. Application

Petitioner's argument that a judicial warrant was still required to record his telephone call, despite V.M.'s written authorization for such recording, raises a claim under the Fourth Amendment. *See Hernandez v. Senkowski*, Nos. 98-5270 RR, 1999 WL 1495443, at *(E.D.N.Y. Dec. 29, 1999) (finding that habeas petitioner's claim that warrant was required for telephone recording raised non-cognizable Fourth Amendment claim). *Stone* prevents the court from considering this claim.

Prior to his trial, petitioner moved to suppress his statements to the police and the contents of the recorded telephone call, and was granted a *Huntley* hearing by the trial court in order to address the admissibility of that evidence. (Dkt. No. 27-2, Huntley Transcript ("HT") 1-83). *See People v. Huntley*, 15 N.Y.2d 72 (1965). Petitioner cannot argue that he did not have a "full and fair" opportunity to raise his Fourth Amendment claim. Clearly, New York State provided the mechanism to challenge the admissibility of the recording on Fourth Amendment grounds, and petitioner was not "prevented from using the mechanism" because of an "unconscionable breakdown" in the process. Thus, petitioner's claims challenging the admission of his statements to

police are barred by *Stone v. Powell* and should be dismissed.[5]

## V.    Lack of Competency Hearing

### A.    Legal Standards

The Supreme Court has repeatedly held that "'the criminal trial of an incompetent defendant violates due process.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Medina v. Calif.*, 505 U.S. 437, 453 (1992)).  A "defendant may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and a rational as well as factual understanding of the proceedings against him."  *Cooper*, 517 U.S. at 354 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *see also Harris v. Kuhlmann,* 364 F.3d 330, 349-50 (2d Cir. 2003); *Kot v. Keyser*, No. 9:16-CV-407 (GTS), 2017 WL 318846, at *7 (N.D.N.Y. Jan. 23, 2017).

A trial court must order a competency hearing *sua sponte* when there is a "reasonable ground for believing that the defendant may be incompetent to stand trial." *Silverstein v. Henderson*, 706 F.2d 361, 369 (2d Cir. 1983).  Still, the failure to conduct a full competency hearing is not grounds for reversal when the defendant appears competent during trial.  *Grune v. Mazzuca*, No. 9:05-CV-691 (TJM/GJD), 2006 WL 1313347, at *6 (N.D.N.Y. May 11, 2006) (citing *Rollins v. Leonardo*, 733 F. Supp. 763, 767 (S.D.N.Y. 1990), *aff'd*, 938 F.2d 380 (2d Cir. 1991)).

---

[5] Respondent also argues that this Fourth Amendment claim was procedurally barred by an independent and adequate state rule. (Dkt. No. 24, at 20).  Because the claim is not cognizable under *Stone,* this court has not addressed respondent's alternative argument.

## B. Application

Petitioner argues that his history of mental illness, and his multiple verbal outbursts prior to and during the trial, should have adequately alerted the trial court of the need for a mental competency hearing. (Dkt. No. 1-4, Pet. Mem. of Law, at 8). Since the Appellate Division rendered a decision on the merits of this claim, "the relevant question in this case is not whether the evidence 'presented a reasonable ground for believing' that [petitioner] was incompetent; instead we must ask whether it was *objectively unreasonable* for the state trial court to have concluded (and the state appeals court to have agreed) that the circumstances *did not* present a reasonable ground for believing that [petitioner] was incompetent." *Harris v. Kuhlmann*, 346 F.3d 330, 356 (2d Cir. 2003) (italics in original).

Petitioner included some of his mental health records as part of his federal habeas petition. (Dkt. No. 1-1, at 47-62). These records, from 2009 and 2010, include a diagnosis of schizoaffective disorder, and describe petitioner as delusional. (Dkt. No. 1-1, at 60). Because these records and treatment notes are all dated post-conviction, they are not relevant to the trial court's determination. *See Kot*, 2017 WL 318846, at *8 (N.D.N.Y. Jan. 23, 2017) (collecting cases). "The question of competency and reasonable cause to doubt it must focus upon the defendant's abilities at the time of trial, not any conduct discovered or analyzed after the fact." *United States v. Gabb*, 80 F. App'x 142, 144-45 (2d Cir. 2003) (citation omitted).

That is not to suggest that petitioner had no mental health problems at the time of his trial. At sentencing, the trial judge opined that it was "obvious" that petitioner's

mental health problems "clouded his judgment," but found that those problems did not excuse petitioner's actions. (SR 187). In his reply in this proceeding, petitioner offered a similar description of his condition at the time of his trial, stating that "petitioner does not claim he was mentally incompetent, rather that he showed signs of mental illness, and that his mind was deteriorating during pre-trial and trial appearances." (Dkt. No. 38, at 25).

"[S]ome degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986). Despite petitioner's recognized, if undefined, mental health issues at the time of trial, the record shows that he was able to actively participate in his defense. Petitioner was regularly engaged with his counsel during pre-trial conferences, jury selection, and at trial, and demonstrated a rational as well as factual understanding of the proceedings. He convinced his trial counsel to allow him to testify at both his *Huntley* hearing and at trial. (HT. at 53-82; TT. at 296-373). During his testimony, petitioner explicitly denied the allegations against him, and forcefully argued that it was not his voice on the recorded telephone call. (TT. 311, 333, 352-55).

Petitioner's disruptive outbursts in the courtroom do not change the analysis. As discussed above, petitioner interrupted the judge several times when he was denied the opportunity to replace his trial counsel. (SR 136-40). Petitioner also had to be removed from the courtroom after he became angry with the prosecution's characterization of the evidence during summation. (TT. 418). However, these multiple verbal outbursts do not automatically create "reasonable grounds" for the trial court to

suspect that petitioner was incompetent, where there is sufficient other evidence that petitioner was competent to stand trial. *Grune,* 2006 WL 1313347, at *6.

In the denial of petitioner's state court appeal, the Appellate Division found no error in the lack of a *sua sponte* competency hearing. *People v. Chicherchia*, 85 A.D. 3d at 796. The appellate court noted that Judge Dwyer had the opportunity to interact and observe petitioner, and thus had an adequate opportunity to assess his competency. In addition, the Appellate Division noted that petitioner's trial counsel, who was in the best position to assess petitioner's mental capacity, did not raise any concerns with the court.[6] *Id.* Giving due deference to the Appellate Division's factual findings on this issue, the trial court's decision not to request a competence hearing was not objectively unreasonable based upon the information available at the time of trial. Accordingly, this court recommends denial of this claim.

## VI.    Right of Self-Representation

### A.    Legal Standards

Under the Sixth Amendment to the Constitution, an accused is guaranteed the right to represent himself. *See Faretta v. California*, 422 U.S. 806, 819-20 (1975). The right to self-representation attaches only if it is asserted "clearly and unequivocally." *Id.* at 835; *Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994); *Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir. 1986). Assuming that a defendant's waiver meets this standard

---

[6] The fact that petitioner's legal counsel did not express any doubts about his competency during the proceeding is a valid factor for the court to consider. *See Pate v. Robinson*, 383 U.S. 375, 391 (1966) ("The conclusive factor is that [petitioner's] own lawyers, the two men who apparently had the closest contact with the defendant during the proceedings, never suggested he was incompetent to stand trial and never moved to have him examined on incompetency grounds during trial.").

and the request is made prior to the start of the trial, "'[t]he right of a defendant in a criminal case to act as his own lawyer is unqualified . . . .'" *Williams*, 44 F.3d at 99 (quoting *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965).

Even if a defendant unequivocally asserts the right to represent himself, the right may be waived through conduct indicating that the defendant is "vacillating on the issue or has abandoned [his] request altogether." *Williams*, 44 F.3d at 100; *LaValle v. Artus*, No. 06-CV-2538, 2009 WL 3761995 at *4 (E.D.N.Y. Nov. 5, 2009), *aff'd*, 403 F. App'x 607, 609 (2d Cir. 2010); *Neish v. Reynolds*, No. 97-CV-1901, 2000 WL 33743383, at *2 (N.D.N.Y. Nov. 30, 2000) (Sharpe, M.J.). Therefore, "[a] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) (quoting *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir.1982)).

### B. Application

Petitioner informed Judge Dwyer that he wanted a new attorney after his appointed counsel declined oral argument on several discovery motions that were before the court. (SR 136). When petitioner's request was denied, petitioner interrupted and stated, "Then I choose to represent myself." (SR 137). When Judge Dwyer ignored this request, petitioner interrupted again, arguing that "I have the option of representing myself." (*Id.*). At the close of the hearing, petitioner apologized to the court for his interruptions. (SR 139-40). He did not make any other requests to represent himself prior to or during the trial.

The Appellate Division concluded that petitioner's request to represent himself

was not unequivocal, because it was made in an attempt to convince the court to appoint new counsel. *People v. Chicherchia*, 926 N.Y.S.2d at 796. "A request to proceed pro se is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel." *Johnstone,* 808 F.2d at 216, n.2. However, the context is important in determining whether a criminal defendant clearly invokes his right to self-representation. "Equivocation, which sometimes refers only to speech, is broader in the context of the Sixth Amendment, and takes into account conduct as well as other expressions of intent." *Williams*, 44 F.3d at 100*; see also Rush v. Lempke*, 500 F. App'x 12, 14 (2d Cir. 2012) (". . .we find that the Appellate Division's rejection of [petitioner's] first self-representation claim was eminently reasonable. Petitioner's initial statement that he would proceed pro se "if [he had] to" was not unequivocal, but part of a transparent effort to obtain an adjournment and substitution of counsel.").

There is no "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Rather, the determination of whether a defendant has knowingly and intelligently waived his rights to counsel depends on "a range of case specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.*

In this case, petitioner promptly apologized to Judge Dwyer for interrupting him, and informed the court that the request to represent himself had been made while petitioner was "upset" by the proceeding. (SR 139-40). When Judge Dwyer advised

him to work with his appointed attorney in preparation for trial, petitioner did not object. (SR 140). A state court may reasonably view a "passing reference to self-representation as simply a figurative expression of frustration or hyperbole," rather than an unequivocal attempt to invoke the right to self-representation. *Lavalle*, 2009 WL 3761995, at *5, *aff'd,* 403 F. App'x at 609. Accordingly, the Appellate Division's decision regarding petitioner's request for self-representation was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    May 22, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge